**EQUAL EMPLOYMENT OPPOR-TUNITY COMMISSION,**
**Plaintiff–Appellant,**

v.

**STATE OF ILLINOIS and Fraternal Order of Police, Troopers Lodge No. 41, Defendants–Appellees.**

No. 92–2108.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1992.

Decided Feb. 16, 1993.

Rehearing and Rehearing En Banc Denied May 11, 1993.

**188**

John P. Rowe, E.E.O.C., Chicago, IL, Paul Bogas (argued), Jason S. Hegy, Steven L. Brenneman, Alicia J. Radick, E.E.O.C., Office of Gen. Counsel, Washington, DC, for E.E.O.C.

John A. Simon, Asst. Atty. Gen., Deborah Gage Haude, Columbus R. Gangemi, Jr. (argued), Gregory S. Folley, Winston & Strawn, Chicago, IL, for State of Ill.

John M. Hosteny, Springfield, IL, for Fraternal Order of Police, Troopers Lodge No. 41.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

The EEOC brought this suit against the state of Illinois, charging that a mandatory retirement provision affecting Special Agents in the Division of Criminal Investigation violates the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a). Under the ADEA such a mandatory retirement provision is illegal unless it meets the exception of § 4(i) (29 U.S.C. § 623(i)). Under § 4(i) states and local governments that had mandatory retirement laws for law enforcement officers and firefighters in effect on March 3, 1983 are allowed to continue to enforce such provisions (at least until this exception expires in December 1993).

Illinois clearly had a mandatory retirement provision for "state police" long before March 3, 1983. This provision is found in Ill.Rev.Stat. ch. 121, ¶ 307.12–1 (hereinafter § 12–1). The issue is whether Special Agents from the Division of Criminal Investigation were included within the "state police" provision before March 3, 1983. Ruling on the defendants' motion for summary judgment, the district court found that there was no dispute of fact, and that as a matter of law the provision did apply to special agents by that date 788 F.Supp. 373. Thus, summary judgment was granted to the state of Illinois, and the EEOC appealed. We affirm.

A grant of summary judgment is reviewed *de novo*. *McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir.1989). This case presents a pure question of statutory interpretation. There have been no Illinois state court decisions on this issue.

In 1977 Governor Thompson re-organized the Department of Law Enforcement by executive order. It had been divided into the State Police (which had uniformed troopers and plainclothes investigators called agents) and the Bureau of Investigation (which was staffed by Special Agents). The new Department was divided into five divisions: the State Police (the uniformed personnel), the Division of Investigation (the old Bureau of Investigation plus the

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

plainclothes agents from the state police), the Division of Support Services (later renamed forensic services and identification), the Division of Administration and the Division of Internal Investigation.

The state's first argument is that the plain language of § 12–1 shows that it applies to the plaintiffs. Certainly common sense would suggest such a reading. Section 12–1 states:

> No person may be retained in service as a State policeman after he has reached 60 years of age.

However, even the defendants concede that this reference to "state policeman" did *not* include special agents before the 1977 executive order. Since the language of § 12–1 has remained the same, while the meaning has arguably changed, the "plain language" of § 12–1 is not a useful guide.

The state contends that the re-organization of 1977 made all of the law enforcement officers "state police" for the purposes of § 12–1. While the executive order does not explicitly state that special agents will henceforth be considered state policemen, the order *does* state that it "establishes a unified personnel system for sworn law enforcement officers." A unified personnel system suggests that the same retirement provisions would apply to all officers. Thus, either the previous retirement rules for the state police or the previous retirement rules for the Bureau of Investigation must apply in the newly unified personnel system. No one has suggested that the mandatory retirement provision for state police officers was repealed, and in fact it continued to be applied to state troopers. Thus, the natural interpretation is that after the re-organization, when the personnel systems became unified, § 12–1 began applying to all state law enforcement officers, and not just to those previously classified as state police.

In addition, ¶ 307.8 of the same chapter ("§ 8"), which was amended in 1979, lends some support to this interpretation. It states that:

> The Board shall establish a classification of ranks of persons subject to its jurisdiction and shall set standards and qualifications for each rank. Each Department of Law Enforcement officer appointed by the Director shall be classified as a State Police officer as follows: trooper, sergeant, lieutenant, captain, or major, or as a Special Agent I through VI.

While arguments based on exact word choice and punctuation can be made for different interpretations, the last sentence is plausibly read to state that *all* officers are state police officers and the various ranks include Special Agents I–VI. It is unlikely that the Illinois legislature was pondering the distinction between the use of a semi-colon and the use of a comma, or whether the series should be linked with "or" or simply more commas, when they drafted this provision. The parties' arguments along those lines were unpersuasive.

The state's interpretation of § 8 and § 12–1 is consistent with other portions of chapter 121, subchapter 307 in which the term "state policemen" is used, and both state police troopers and special agents are intended to be included. The affidavit of James Finley, filed by the state and uncontradicted by the EEOC, states that the longevity increase in salary (ch. 121, ¶ 307.-8b), and the provision of public liability insurance (ch. 121, ¶ 307.17a) have been applied to special agents since 1977. The use of the term state policemen to include special agents in other portions of ch. 121, strongly supports the state's interpretation of § 12–1 to include special agents.

The EEOC's arguments to the contrary are not persuasive. The EEOC relies upon portions of the pension laws which, prior to amendment, distinguish between service as a special agent and service as a state police officer. Ill.Rev.Stat. ch. 108½, ¶ 14–110 (1983). The EEOC argues, first that the distinction made in the pension law proves that there were two separate classifications of officers, and § 12–1, the mandatory retirement provision, did not apply to both of them. However, if the two classes of officers were only unified in 1977, officers who retired in subsequent years would likely have served when the distinction between the two classes remained. Thus, naming the two separate classes in the pension law

is not evidence that there continued to be two separate classes in active duty. The EEOC further argues that the later amendment to this section which eliminated the distinction proves that the earlier distinction was significant. However, this amendment can be seen in the nature of "cleaning up" the pension law to conform to the otherwise unified system. Furthermore, even if there had been a real distinction between state police and special agents under the pension law, that does not mean that there had to be such a distinction under § 12–1 or other portions of the law.

The EEOC also relies upon a memorandum from then Director of the Illinois Department of Law Enforcement, now Judge James B. Zagel, which states his opinion that § 12–1 does not cover special agents. His opinion is based on the fact that in the motor vehicle laws there is a specific reference made to state policemen which is clearly meant to include only the state troopers, and not the special agents, thus suggesting that in other places where state policemen or police officers are referred to, special agents are not included. With all due respect to then Director Zagel's opinion, Director Margolis reached a different conclusion. Even without this internal administrative disagreement to resolve, "courts remain the final authority on issues of statutory construction and must reject administrative interpretations that are inconsistent with statutory mandate...." *Graczyk v. United Steelworkers of America*, 763 F.2d 256, 263 n. 10 (7th Cir.1985).

The EEOC also relies on a second executive order. In 1985 the Department of Law Enforcement was renamed the Department of State Police, and the Division of State Police was renamed the Division of State Troopers. The executive order stated that this was being done because:

> The Department of Law Enforcement (the "Department"), consists of five divisions, of which, in only one, the Division of State Police, are personnel given the title State Police. This anomaly is confusing, and is a contributing factor to delayed services because of improper or misguided requests for certain services by police agencies and the public.

This change in the official organizational charts does not help the EEOC's position. The evidence discussed above showed that references to state police were intended to and were applied as if they included special agents. This evidence and common sense would suggest that state police included both troopers and investigators. Thus, the 1985 executive order merely corrected the "anomaly" of the official designation not coinciding with the actual usage of "state police."

Finally, the EEOC argues that § 12–1 was not applied to special agents prior to 1987, suggesting that for many years after 1983 the state believed that there was a distinction between state police and special agents and that § 12–1 did not apply to special agents. However, this argument was not made below, depriving us of a factual record on this contention, and depriving the district court of a chance to consider this argument. This contention is therefore waived. *United States v. U.S. Currency*, 863 F.2d 555, 558 n. 6 (7th Cir. 1988).

For the foregoing reasons, the summary judgment granted by the district court is affirmed.

POSNER, Circuit Judge, dissenting.

The question we are called upon to decide, which the majority treats as one of law, as I am content to do as well, is whether in 1983 "special agents" in the Illinois Department of Criminal Investigation were required to retire at the age of 60. If so, Illinois can require them to retire at that age today notwithstanding the abolition of mandatory retirement by the Age Discrimination in Employment Act. I would have thought that if special agents had been subject to mandatory retirement since the reorganization of the department in 1977, as the court today holds, there would be some documentary trace of the fact. There is none. Or some evidence that some special agents had squawked when they found out that as a result of an executive reorganization they were subject to mandatory retirement at an early age. There is no evidence of that either. I would also have thought that some special agents would have been forced to retire at

age 60; there is no evidence that any were, until the forced retirements in 1987 that precipitated this suit and several others like it. Certain regulatory and statutory changes in 1985 and 1988 may or may not have subjected special agents to mandatory retirement at age 60. That is irrelevant. The only question is whether they were subject to it in 1983. I find no indication that they were.

Before 1977, what is now called the Department of Criminal Investigation comprised, so far as relevant to this case, the State Police and the Bureau of Investigation. The State Police had some plainclothes investigators as well as the uniformed state troopers. All were subject to the mandatory retirement law, which had been enacted in 1974. The law enforcement officers in the Bureau of Investigation were called "special agents" and, the state concedes, were not covered by the mandatory retirement law. The 1977 reorganization which the state claims brought the special agents under the mandatory retirement law placed the uniformed troopers in a division of state police and the plainclothes state policemen along with the special agents in a division of investigation. The only indication that this reorganization might have affected the retirement of special agents is that the order states that it "establishes a unified personnel system for sworn law enforcement officers." But it gives no particulars, and it does not rename special agents "state policemen" so as to bring them within the terms of the mandatory retirement law. Nor was that law amended to bring special agents within its scope. And the persons forced to retire in this case had always been special agents; they had not been plainclothes state policemen before the reorganization.

In 1979 the Illinois legislature provided that every law enforcement officer "shall be classified as a State Police officer as follows: trooper, sergeant, lieutenant, captain, or major, or as a Special Agent I through VI." This can be read to make a special agent a type of state policeman but equally it can be read to divide law enforcement officers into state policemen and special agents, each with its own system of ranks, as in the army and the navy.

According to an uncontradicted affidavit by a state official, ever since 1977 the statutory entitlements of "state policemen" to longevity increases in salary and to public liability insurance have been accorded to special agents. Standing by itself, this extension would be evidence that special agents became state policemen by virtue of the reorganization. But it does not stand by itself. It stands beside the state's failure to extend mandatory retirement to special agents. The state either thought that "state policemen" meant something different in different statutes, or decided to confer the benefits of being a state policeman on the special agents but not the burdens. On either interpretation, the "unified personnel system for sworn law enforcement officers" contemplated by the 1977 reorganization was not understood to subject special agents to the mandatory retirement provision applicable to state policemen.

I repeat: a profound change in the terms of employment of a substantial class of employees could be expected to be recorded somewhere, or at least noticed and protested by those adversely affected by it. The silence is deafening. The inference is to me inescapable that special agents were not in fact subject to mandatory retirement at age 60 in 1983. The decision of the district court, dismissing the EEOC's suit, should therefore be reversed.